## S07F1009. UNDERWOOD v. UNDERWOOD.

(651 SE2d 736)

CARLEY, Justice.

Spring Underwood (Wife) filed for divorce from Richard Underwood (Husband), and the case proceeded to a bench trial. On the second day, the parties announced in open court that they had reached a settlement. Counsel read the agreement into the record, and both Husband and Wife testified under oath that they agreed to the settlement.

Before entry of final judgment, however, Husband moved to set aside the agreement, contending that he did not understand its ramifications because of the anxiety and grief he was experiencing over the recent death of his brother. Wife objected, and moved to enforce the settlement. After conducting a hearing, the trial court denied Husband's motion to set aside the agreement and granted Wife's motion to enforce it. The trial court subsequently entered final judgment, granting the divorce, approving the settlement agreement, and incorporating the same into the decree.

Husband moved for a new trial. The trial court denied the motion, but, recognizing a mistake in the final judgment, it did reduce from $150,000 to $100,000 the face amount of the life insurance policy Husband was to maintain for Wife's benefit. In addition, the order provided that "[a]ll remaining provisions of the Final Decree . . . shall remain in full force and effect." Husband applied for discretionary appeal, which was granted pursuant to our pilot project in domestic relations cases.

1. OCGA § 5-6-35 (d) provides, in relevant part, that an application for discretionary appeal must

> be filed with the clerk of the Supreme Court . . . within 30 days of the entry of the order, decision, or judgment complained of. . . . When a motion for new trial . . . has been filed, the application shall be filed within 30 days after the entry of the order granting, overruling, or otherwise finally disposing of the motion.

Husband filed a motion for new trial, and then applied for discretionary appeal within 30 days of the final disposition of that motion. However, Wife contends that his motion for new trial was too late, because he filed it within 30 days of the entry of final judgment, rather than within 30 days of the grant of her motion to enforce the agreement.

In urging that Husband's motion for new trial was untimely, Wife relies on the following language from *Moore v. Farmers Bank of Union Point*, 182 Ga. App. 94, 95 (1) (354 SE2d 692) (1987): "An order

granting a motion to enforce a disputed settlement agreement is tantamount to a final judgment and constitutes an order finally terminating the case. [Cit.]" She contends that, if the grant of her motion to enforce the settlement is the equivalent of a final judgment which ended the case, then he should have filed his motion for new trial within 30 days of the entry of that order. However, Wife's reliance on the language from *Moore* is misplaced, because it is an incorrect statement of the principle of finality. It is clear that, notwithstanding the trial court's grant of a motion to enforce a settlement, a case is not at an end until such time as the agreement has "been made the judgment of the court, thereby terminating the litigation." *Kapiloff v. Askin Stores*, 202 Ga. 292, 297 (42 SE2d 724) (1947). The proper concept of finality was actually recognized in *Moore*, supra, when, after making the erroneous statement quoted above, the Court of Appeals then correctly noted that the "final disposition of the case, in a non-jury trial, [is] the order [granting the motion to enforce] *and judgment of the trial court. . . .*" (Emphasis supplied.) See *Zeitman v. McBrayer*, 201 Ga. App. 767, 768 (2) (b) (412 SE2d 287) (1991). Thus, the above referenced inaccurate statement of the principle of finality which is set forth in *Moore* is hereby disapproved.

Wife further contends that, even if it was timely filed, Husband's motion for new trial nevertheless was not a proper post-judgment procedural vehicle by which he could obtain review of the final judgment. " 'A motion for a new trial is a proper means of seeking a retrial or reexamination, in the same court, of an issue of fact, or of some part or portion thereof, after decision by a jury or a decision by the court thereon.' [Cit.]" *Eldridge v. Ireland*, 259 Ga. App. 44, 47 (2) (576 SE2d 44) (2002). However, we need not decide whether a motion for new trial was proper here, because the trial court did more than deny Husband's motion. As previously noted, it corrected the error in the judgment so as to reduce the face amount of the life insurance policy to $100,000 and to specify that all other provisions of the final decree would remain in force. This "corrective action constituted a final order which is directly appealable. [Cits.]" *Nodvin v. West*, 197 Ga. App. 92, 94 (1) (397 SE2d 581) (1990). Since Husband filed his application for discretionary appeal within 30 days of entry of that final appealable order, it was timely. *Nodvin v. West*, supra. Therefore, we proceed to the merits of the enumerations of error.

2. Husband contends that the agreement is unenforceable, because it is incomplete and contains ambiguous terms. However, he does not cite any viable example to support this assertion. Contrary to Husband's contention, overstatement of the face amount of the life insurance policy was not an ambiguity, but an irregularity appearing

on the face of the record. As such, it was properly corrected by the trial court. See *Williams v. Stancil*, 119 Ga. App. 800 (1) (168 SE2d 643) (1969).

Husband also contends that the terms regarding division of the parties' retirement and pension accounts are vague and unenforceable, because, rather than specify the precise amounts that those accounts contained, the agreement stated the figures only as approximations. However, the exact dollar amounts were irrelevant, because the agreement provided for an even division of the parties' respective retirement accounts as of a stated date and for Wife to receive a one-third share of Husband's pension whenever it became payable to him. Thus, the agreement unambiguously provided for a precise percentage or share of the accounts, without regard to the exact dollar amounts that those accounts might contain at the present or some future time. While the amount that each would ultimately receive is unclear, the percentage or share to which they would be entitled is clearly provided. Compare *Moss v. Moss*, 265 Ga. 802 (463 SE2d 9) (1995).

3. Husband contends that the trial court erred in failing to find that his emotional state after his brother's death was a meritorious ground for holding the agreement unenforceable. See *Frost v. Frost*, 235 Ga. 672, 674 (2) (221 SE2d 567) (1975). However, the transcript shows that he never sought a continuance of the divorce proceeding. Instead, Husband offered an unqualified acknowledgment in open court and under oath that he agreed to the settlement that counsel read into the record. Under the circumstances, the trial court did not err in finding that the agreement was enforceable against Husband and, thus, properly incorporated it into the final decree. See *Herndon v. Herndon*, 227 Ga. 781 (183 SE2d 386) (1971). Compare *Bridges v. Bridges*, 256 Ga. 348 (349 SE2d 172) (1986).

*Judgment affirmed. All the Justices concur.*

DECIDED OCTOBER 9, 2007 —
RECONSIDERATION DENIED NOVEMBER 5, 2007.

*Joseph M. Todd*, for appellant.
*Duffy & Feemster, Dwight T. Feemster*, for appellee.